## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

TERRANCE PEVIE,
*Prisoner Identification No. 404-424,*

    Plaintiff,

    v.

JOHN WOLFE, *Warden*, and
LA'TRICIA TAYLOR,
*Correctional Hearing Officer*,

    Defendants.

Civil Action No. TDC-15-3271

## MEMORANDUM OPINION

Plaintiff Terrance Pevie, currently confined at Eastern Correctional Institution, has filed this civil rights complaint pursuant to 42 U.S.C. § 1983 alleging that while confined at Jessup Correctional Institution ("JCI"), Warden John Wolfe and Correctional Hearing Officer La'Tricia Taylor (collectively, "Defendants") denied him due process in prison disciplinary proceedings. Pending before the Court are Pevie's third Motion to Appoint Counsel and Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. Having reviewed the filings on both Motions, the Court finds no hearing necessary. *See* D. Md. Local R. 105.6 (2016). For the reasons set forth below, Pevie's third Motion to Appoint Counsel is DENIED, and Defendants' Motion, construed as a motion for summary judgment, is GRANTED.

## BACKGROUND

The salient facts of this case are not in dispute. On June 23, 2014, Correctional Officer Lewis discovered that Pevie and his cellmate had an unauthorized cover over their cell window and thus rescinded their daily recreation period. Pevie and his cellmate complained first to

Officer Lewis, then to Sergeant Lionel Burnett.  At some point, the conversation with Sergeant Burnett became argumentative, and Pevie and his cellmate were ordered to return to their cell. Pevie failed to comply, so Sergeant Burnett handcuffed him.  According to Sergeant Burnett, while he was escorting Pevie from the scene, Pevie threatened him.

That same day, based on these events, Sergeant Burnett cited Pevie for violating three prison rules: (1) Rule 104: using intimidating or threatening language; (2) Rule 312: interfering with a correctional officer's duties; and (3) Rule 400: disobeying an order.  Pevie was provided written notice of the alleged infractions, and a hearing was scheduled for July 17, 2014.  Upon receipt of the notice, Pevie requested in writing to call Officer Lewis as a witness at the hearing.

Immediately prior to the start of the July 17, 2014 hearing convened by Hearing Officer Taylor, Pevie orally reiterated his request to call Officer Lewis as a witness.  Based on Pevie's prior written request, Officer Lewis was present and ready to testify.  Sergeant Burnett did not testify; his account of the events was taken from the facts he asserted in the original rule violation report.  Because Pevie agreed to plead guilty to violating Rule 400, the hearing proceeded only as to the two remaining alleged violations.  When Pevie testified during the hearing, he denied that he had threatened Sergeant Burnett.  After Pevie's testimony, Hearing Officer Taylor asked Pevie if he had any additional information to present.  Pevie stated that he did not, so Hearing Officer Taylor closed the hearing record.  Immediately after Hearing Officer Taylor announced that the record was closed, Pevie asked to call Officer Lewis.  Hearing Officer Taylor refused, reiterating that the record had been closed.

Hearing Officer Taylor credited Sergeant Burnett's account of the events and thus found Pevie guilty of violating Rules 104 and 312.  For the violation of Rule 104, Hearing Officer Taylor revoked 300 days of good-time credits, imposed a 300-day segregation period, and

suspended Pevie's visitation privileges for 180 days.  For the violations of Rule 312 and Rule 400, Hearing Officer Taylor imposed a 60-day and 45-day segregation period, respectively, to run concurrent to the 300-day period imposed for his violation of Rule 104.  In her written report of the hearing, Hearing Officer Taylor made no mention of Pevie's requests at the hearing to call Officer Lewis as a witness.

Pevie timely appealed Hearing Officer Taylor's decision to Warden Wolfe.  Pevie argued that the refusal to allow him to call Officer Lewis denied him his right to procedural due process. Warden Wolfe affirmed Hearing Officer Taylor's decision in all respects.  Pevie then appealed to the Inmate Grievance Office ("IGO"), which scheduled a hearing on his appeal for March 11, 2015. On March 3, 2015, after reviewing the recording of the July 17, 2014 hearing, Randy Watson, Director of Programs and Services for the Department of Public Safety and Correctional Services, issued an Order reversing Hearing Officer Taylor's decision, vacating all sanctions imposed, and remanding the case to the prison for a new hearing before a different hearing officer.  Director Watson noted that the burden of calling witnesses at disciplinary hearings is on the hearing participant, not the hearing officer, see Md. Code Regs. 12.02.27.26(H)(2) (2012), such that Hearing Officer Taylor had followed "the letter of the administrative law" in not allowing Pevie to call Officer Lewis as a witness.  3d Am. Compl. Ex. 4 at 1, ECF No. 10-4. However, Director Watson found that the spirit of the law dictated that Pevie should have been allowed to present his evidence, because Pevie had made his request for Officer Lewis to testify immediately after the record was closed and before the decision was entered, and because Officer Lewis was present and ready to testify, such that reopening the record would have caused the State no appreciable hardship.  In light of Director Watson's determination, Pevie's IGO appeal was found to be moot.

On April 2, 2015, Pevie proceeded to a second disciplinary hearing in front of a different hearing officer on all three alleged violations. At that hearing, he was permitted to call Officer Lewis as a witness. Officer Lewis testified that he was present throughout the incident between Pevie and Sergeant Burnett and that he did not hear Pevie make any threats. He also testified, however, that prior to being handcuffed, Pevie appeared aggressive and was not complying with instructions. Pevie again denied threatening Sergeant Burnett. Sergeant Burnett again did not testify.

Based on this evidence, the hearing officer found that Pevie had violated Rule 312 (interfering with a correctional officer's duties) and Rule 400 (disobeying an order), but that he had not violated Rule 104 (using intimidating or threatening language). The hearing officer imposed 15 days of segregation for each violation, to run concurrently. Those terms were already satisfied because at that point Pevie had already served the 300 days of segregation originally imposed. The hearing officer imposed no other punishment.

On April 27, 2016, Pevie filed this lawsuit in which he has asserted that Hearing Officer Taylor violated his due process rights by not allowing him to call Officer Lewis as a witness at the first disciplinary hearing, and that Warden Wolfe violated those rights by affirming Hearing Officer Taylor's determination. Since filing his initial Complaint, Pevie has amended his allegations three times, primarily to provide the Court with the documentary trail leading from his first disciplinary hearing to his second. In particular, the exhibits attached to Pevie's Complaint include: (1) the first Hearing Record, (2) his appeal to and the response from Warden Wolfe, (3) his appeal to the IGO, (4) Director Watson's Order, (5) the IGO opinion finding his appeal moot, (6) the second Hearing Record, (7) a letter from a prison psychologist stating that Pevie experienced anger, anxiety, and stress while confined in segregation during his appeal of

the discipline imposed at the first hearing, and (8) a pending motion in Pevie's underlying criminal case seeking a sentence reduction based on Pevie's behavior in prison. Pevie seeks compensatory and punitive damages for Defendants' alleged violation of his due process rights based on the physical and mental impact of the disciplinary proceedings and his subsequent placement in segregation, and the potential negative impact of those proceedings on his pending motion for a reduction of sentence in his underlying criminal proceedings.

On July 13, 2016, Defendants filed their Motion to Dismiss or, in the Alternative, Motion for Summary Judgment to which they attached exhibits that duplicate Pevie's first six exhibits. Defendants also included as an exhibit Pevie's written acknowledgment that he received the violation notice. Defendants' Motion became ripe for disposition on November 9, 2016. On November 16, 2016, Pevie submitted correspondence complaining that he has been subjected to cell searches, that he has sent legal mail home to protect it from tampering, and that he had been placed in administrative segregation pending a transfer that is now complete. Because Pevie's assertions in that correspondence are not germane to the due process issue that forms the basis of his Complaint, the Court does not consider those assertions in resolving the pending dispositive motion.

## DISCUSSION

### I.   Motion to Appoint Counsel

On December 7, 2016, Pevie filed his third Motion to Appoint Counsel. This Court previously denied Pevie's first two such motions without prejudice. In his third Motion, Pevie offers arguments for appointment of counsel comparable to those offered in his prior motions. He asserts that he lacks the funds to retain counsel, his imprisonment limits his access to legal

research, and his imprisonment makes him unable to interview witnesses. Pevie also claims that prison officials have stolen documents relating to this litigation.

These reasons do not establish cause to appoint counsel. "The court may request an attorney to represent any person" proceeding *in forma pauperis* who is "unable to afford counsel." 28 U.S.C. § 1915(e)(1) (2012). In civil actions, however, the Court appoints counsel only in exceptional circumstances. *Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975). In doing so, the Court considers "the type and complexity of the case," whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (internal citations omitted), *abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989). Exceptional circumstances include a litigant who "is barely able to read or write," *id.* at 162, or clearly "has a colorable claim but lacks the capacity to present it," *Berry v. Gutierrez*, 587 F. Supp. 2d 717, 723 (E.D. Va. 2008); *see also Altevogt v. Kirwan*, No. WDQ-11-1061, 2012 WL 135283, at *2 (D. Md. Jan. 13, 2012). Inherent in this analysis is that one's indigence is insufficient to establish exceptional circumstances. Pevie's other proffered reasons also do not present exceptional circumstances or a particular need that would warrant appointment of an attorney. Rather, Pevie has adequately presented his claims and has been able to provide the Court with all documents necessary to resolve his case. The Motion for Appointment of Counsel will be denied.

## II.    Motion to Dismiss, or in the Alternative, Motion for Summary Judgment

### A.    Legal Standard

Defendants move to dismiss the Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. Ordinarily, summary judgment is inappropriate "where the parties have not had an

opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). Here, however, no discovery appears necessary. The parties have each submitted to the Court—as exhibits attached to Pevie's Complaint and as attachments to Defendants' Motion—substantially identical records. Pevie has nowhere indicated that he needs discovery to obtain information essential to his opposition. *See Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2015). Indeed, in his Opposition to Defendants' Motion, Pevie neither objects to consideration of Defendants' Motion as a motion for summary judgment nor asserts that there are disputed issues of fact. Where, as here, the plaintiff has been afforded the opportunity to oppose summary judgment on the grounds that discovery is needed but has not done so; there is no dispute between the parties as to what constitutes the material elements of the record; and the record appears to be complete, it is appropriate to consider Defendants' Motion as a motion for summary judgment. *See Pisano*, 743 F.3d at 931 (noting that a court should hesitate to proceed to summary judgment when there is "necessary information" that might be obtained in discovery); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (stating that "the party opposing summary judgment cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery") (citation omitted).

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in

the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## B.     Due Process

Pevie's due process claim is based on two central factual assertions: (1) that Hearing Officer Taylor did not allow him to call Officer Lewis at his first disciplinary hearing and (2) that Warden Wolfe affirmed Hearing Officer Taylor's hearing decision. Defendants do not dispute these assertions. Accordingly, there is no genuine dispute of material fact between the parties, only a legal dispute whether Pevie has adequately stated a due process claim based on these facts. The Court thus turns to the legal merits of that claim.

Under *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974), Pevie has a constitutionally protected liberty interest under the Fourteenth Amendment in maintaining earned good-time credits, which allow for an inmate's early release, such that his good-time credits may not be revoked without procedural due process. *See id.* at 558. Based on *Wolff*, Pevie asserts that Hearing Officer Taylor's refusal to reopen the hearing record to allow Pevie to call Officer Lewis deprived him of that due process. Whether Pevie's argument is legally sound, particularly considering that the burden of calling witnesses was his to carry, *see* Md. Code Regs. 12.02.27.26(H)(2), need not be resolved here. Hearing Officer Taylor's determination based on the first disciplinary hearing was reversed, the sanctions she imposed were vacated, and Pevie's

good-time credits were fully restored. Pevie was then afforded a new hearing at which he was able to present all of the evidence that he wished to offer, including the testimony of Officer Lewis. As a result of the second disciplinary hearing, Pevie received a significantly reduced sanction of 15 days of segregation, and he had no good-time credits rescinded. Any infringement of Pevie's due process rights based on the first disciplinary hearing was therefore cured by Pevie's successful administrative appeal, because "[t]here is no denial of due process if the error the inmate complains of is corrected in the administrative appeal process." *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995). *See Harper v. Lee*, 938 F.2d 104, 105 (8th Cir. 1991) (finding no due process violation when the wrongful failure to permit a prisoner to offer log book evidence at a disciplinary hearing was reversed on appeal and corrected at a second disciplinary hearing, because the "administrative appeal process is part of the due process protection afforded prisoners"); *Young v. Hoffman*, 970 F.2d 1154, 1156 (2d Cir. 1992) (holding that the prisoner-plaintiff "was ultimately afforded his due process protections" because the administrative reversal of his disciplinary proceedings "cured any procedural defect that may have occurred"). As a result, Pevie's due process claim under *Wolff* fails as a matter of law.

To the extent that Pevie's Complaint can be construed to assert other harms as the result of the disciplinary proceedings, his allegations do not implicate a constitutionally protected liberty interest that would allow Pevie to succeed on a due process claim. Pevie asserts that by the time the sanctions imposed at the first disciplinary hearing were vacated, he had already served the full term of segregation, such that he unjustifiably ended up serving more time in segregation than the 15 days ultimately imposed. The United States Supreme Court, however, has held that liberty interests protected by due process generally extend only to those conditions that impose "atypical and significant hardship on the inmate in relation to the ordinary incidents

of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, an inmate who was sentenced to 30 days of disciplinary segregation, served that time, then had the disciplinary decision overturned on appeal, filed a due process claim under 42 U.S.C. § 1983, relying on *Wolff*. *Id.* at 476. The Court held that the disciplinary segregation, which did not affect the duration of the prison sentence, did not present the type of deprivation that implicates a constitutional liberty interest giving rise to due process rights. *Id.* at 486. Likewise, the United States Court of Appeals for the Fourth Circuit has held that inmates have no liberty interest in avoiding, and thus no due process claim stemming from, being placed into administrative segregation. *Beverati v. Smith*, 120 F.3d 500, 502-04 (4th Cir. 1997) (rejecting a due process claim by inmates held in administrative segregation for six months after disciplinary charges were resolved). The Court so held even though the actual conditions in segregation were markedly "more burdensome than those imposed on the general prison population," because those conditions were "not so atypical" that they "imposed a significant hardship in relation to the ordinary incidents of prison life." *Id.* at 504 (noting the inmates' claims that segregation included vermin-infested cells, human waste in cells, leaking toilets, unbearable heat, less food, reduced access to clean clothes and linens, reduced out-of-cell time, no outdoor recreation time, and no educational or religious services). Where Pevie has neither claimed nor offered evidence that the conditions of his segregation went beyond those in *Sandin* and *Beverati* such that they meet this "atypical and significant hardship" standard, the Court finds no due process violation arising from Pevie's time in segregation. *Sandin*, 515 U.S. at 484.

Similarly, although the record is not clear whether Pevie was actually deprived of visitation rights before his original disciplinary sanctions were rescinded, any such loss would not implicate a constitutionally protected liberty interest. *See Williams v. Ozmint*, 716 F.3d 801,

807–08 n.9 (4th Cir. 2013) (holding, in the context of a qualified immunity analysis, that a two-year suspension of an inmate's visitation privileges did not violate a clearly established constitutional right); *White v. Keller*, 438 F. Supp. 110, 120 (D. Md. 1977), *aff'd per curiam* 588 F.2d 913 (4th Cir. 1978) (holding that there is no constitutional right to prison visitation privileges giving rise to procedural due process protections).   Finally, the results of the first disciplinary proceeding had no effect on Pevie's motion to reduce sentence in his underlying criminal case because, as Pevie does not dispute, that motion remains pending.

Because Pevie has not identified a due process violation arising from the failure to permit his requested witness to testify at the first disciplinary hearing, Defendants' motion for summary judgment will be granted.

## CONCLUSION

For the foregoing reasons, Pevie's Motion to Appoint Counsel is DENIED, and Defendants' Motion, construed as a motion for summary judgment, is GRANTED.   A separate Order shall issue.

Date:  February 28, 2017

THEODORE D. CHUANG
United States District Judge